TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
KEVIN B. REIDY (Cal. Bar No. 320583)
Assistant United States Attorney
Major Frauds Section
        1100 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone:    (213) 894-8536
        Facsimile:    (213) 894-0141
        E-mail:        kevin.reidy@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>SOPHIA SHAKLIAN,<br><br>        Defendant. | No. CR 24-00583-SB-1<br><br><br>GOVERNMENT'S SENTENCING POSITION |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorney Kevin B. Reidy, hereby submits its sentencing position regarding defendant Sophia Shaklian.

//

//

The government's sentencing position is based upon the attached memorandum of points and authorities, the Presentence Investigation Report, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 17, 2026

Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division


_____/s/_____
KEVIN B. REIDY
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant Sophia Shaklian ("defendant") and her co-conspirators perpetrated a five-year-long scheme to defraud Medicare by submitting fraudulent claims for hospice care and diagnostic testing services that were either unnecessary or not provided at all. Through her conduct, defendant caused a loss to Medicare of over $14 million.

Defendant has pleaded guilty, pursuant to a plea agreement, to count thirteen of the indictment charging her with health care fraud, in violation of 18 U.S.C. § 1347.  In the PSR, the Probation Officer calculated a total offense level of 22, a Criminal History Category of I, and a Guidelines range of 41 to 51 months' imprisonment. (Dkt. 96 ¶ 119.)  The Probation Officer ultimately recommended that the Court sentence defendant to 30 months' imprisonment and 2 years' supervised release.  (Dkt. 95.)

The government agrees with the Probation Officer's Guidelines calculation but respectfully disagrees with her sentencing recommendation.  The government instead asks that the Court impose a low-end sentence of 41 months' imprisonment, a two-year term of supervised release, and a $100 special assessment.

### II.   STATEMENT OF FACTS

Between 2019 and 2024, defendant and at least two co-schemers perpetrated a scheme to defraud Medicare by submitting false claims for hospice and diagnostic services that were not medically necessary or were not actually provided. (Dkt. 96 ¶¶ 13-25.)  Defendant created one fraudulent hospice provider involved in the fraudulent billing scheme, Chateau D'Lumina Hospice and Palliative Care, Inc. ("Chateau D'Lumina"), enrolled it in Medicare, and was the sole signatory on its bank account.  (Id. ¶ 19.)  Defendant also used aliases such as "Sarah Rowen" or "Alexis" to conduct Medicare billing for several fraudulent diagnostic companies in the scheme. (Id. ¶¶ 20-21.)

On behalf of the fraudulent hospice and diagnostic providers, defendant would use information of Medicare beneficiaries, check their eligibility for services, then

knowingly and willfully submit fraudulent claims to Medicare on behalf of beneficiaries who did not need the services, had never received the services, and were not familiar with the fraudulent hospice and diagnostic providers. (Id. ¶ 23.) Defendant submitted these claims with the intent to defraud Medicare into reimbursing the fraudulent providers for the claimed services. (Id.) In one example, on November 29, 2022, defendant and her co-schemers executed the scheme by submitting a false and fraudulent claim for $2,000 for diagnostic testing services that were purportedly provided (but not actually provided) to a beneficiary. (Id.) Given defendant's involvement in the fraudulent Medicare billing, defendant intended to cause (and did cause) a loss of at least $14,103,043.90 to Medicare. (Id. ¶¶ 25, 27.)

## III.    THE PRESENTENCE REPORT

In the PSR, the Probation Officer calculated a total offense level of 22 and a Criminal History Category of I. The Probation Officer's offense level calculation is as follows:

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2B1.1(a) |
| Loss $9.5-$25 million | +20 | U.S.S.G. § 2B1.1(b)(1)(K) |
| Federal Health Care Offense | +3 | U.S.S.G. § 2B1.1(b)(7) |
| Minor Role | -2 | U.S.S.G. § 3B1.2(b) |
| Acceptance: | -3 | U.S.S.G. § 3E1.1(a) |
| Zero-Point | -2 | U.S.S.G. § 4C1.1 |
| TOTAL | 22 | |

(Id. ¶¶ 31-53.) The Probation Officer calculated a criminal history score of 0 and a Criminal History Category of I. (Id. ¶¶ 55-59.) A total offense level of 22 and a Criminal History Category of I resulted in an advisory Guidelines range of 41-51 months' imprisonment. (Id. ¶ 119.)

2

## IV.    PROBATION OFFICER'S RECOMMENDATION

The Probation Officer recommended a sentence of 30 months' imprisonment and 2 years' supervised release.  (Dkt. 95.)  In making the recommendation, the Probation Officer acknowledged that it represented a "downward variance" but stated that the variance accounted for certain factors in defendant's background. (Id. at 8.)

## V.    GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends that the Court sentence defendant to a low-end sentence of 41 months' custody, a two-year period of supervised release, and a $100 special assessment.  The low-end term of custody adequately reflects the seriousness of defendant's offense conduct, her lack of criminal history, and the need to deter defendant and others from further criminal conduct.

Defendant's defrauding of Medicare was serious and the need to deter others from engaging in similar crimes is particularly great.  Defendant created a fraudulent hospice provider and conducted extensive fraudulent billing at fraudulent diagnostic providers, causing over $14 million in losses to Medicare.  Medicare is an especially vulnerable government program that can scarcely afford such schemes, which are, unfortunately, all-too-common nationwide and particularly pernicious in this District. Health care fraud prosecutions have increased since 2019 and news reports reflect considerable health care fraud causing increasingly greater losses to Medicare and other insurers. See "Health Care Fraud," United States Sentencing Commission, https://www.ussc.gov/research/quick-facts/health-care-fraud (last visited Feb. 26, 2026) (noting increase in cases of 19.7% since fiscal year 2020); see, e.g., U.S. Department of Justice Office of Public Affairs, "National Health Care Fraud Enforcement Action Results in 193 Defendants Charged and Over $2.75 Billion in False Claims," June 27, 2024, https://www.justice.gov/opa/pr/national-health-care-fraud-enforcement-action-results-193-defendants-charged-and-over-275-0; Spencer Kimball, "Justice Department Charges 78 People with $2.5 Billion in Health-Care Fraud," CNBC.com, June 28, 2023, https://www.cnbc.com/2023/06/28/doj-charges-78-people-with-2point5-billion-in-

3

health-care-fraud.html. Schemes similar to defendant's with sham Medicare providers are also on the rise. See Emily Alpert Reyes, "Five arrested over 'sham hospices' alleged to bilk Medicare for over $15 million," Los Angeles Times, June 8, 2024, https://www.latimes.com/california/story/2024-06-08/five-arrested-in-alleged-medicare-fraud-for-sham-hospices. A low-end sentence is required to dissuade others from engaging similar fraudulent schemes and to help preserve Medicare's resources so it can continue to provide care to qualified beneficiaries who depend on the program for medical care.

The government does not recommend any additional time beyond 41 months in custody. Such a sentence would account for defendant's challenging personal circumstances, her absence of criminal history, her role in the scheme, and the comparatively small benefit she received from the fraud. The government believes that such a significant sentence would be more than sufficient reason for defendant to abstain from future criminal conduct and become a productive member of society upon her release.

//

//

4

## VI.    CONCLUSION

The government recommends that the Court impose a sentence of 41 months' imprisonment, followed by a two-year period of supervised release, and a special assessment of $100.  Such a sentence would be sufficient, but no greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).

Dated: February 17, 2026

Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

 /s/
KEVIN B. REIDY
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA